AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

| | |
|---|---|
| United States of America )<br>)<br>v. )<br>)<br>QUONDALL D. DAVIS, a/k/a Hot Dog )<br>_____ )<br>*Defendant* | Case No. 19-MJ-4044 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between in or about April 2017 and July 2018, in the county of Monroe in the Western District of New York, the defendant, QUONDALL D. DAVIS did knowingly recruit, enticing, harbor, transport, provide and maintain a person, that had not attained the age of 18 years and would be caused to engage in a commercial sex act, in and affecting interstate commerce in violation of Title 18, United States Code, Sections 1591(a) and 1591(b)(2); and

Between in or about November 2017 and April 2018 in the county of Monroe in the Western District of New York, the defendant, QUONDALL D. DAVIS, did knowingly, in and affecting interstate commerce, recruit, entice, harbor, transport, provide, and obtain a person, would be caused to engage in a commercial sex act through the use of force, threats of force, fraud, coercion, or any combination thereof, in violation of Title 18, United States Code, Sections 1591(a) and 1591(b)(1).

X   Continued on the attached sheet.

Please see attached affidavit

_____
*Complainant's Signature*

Christopher Toscano, TFO FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/3/19

_____
*Judge's signature*

City and State: Rochester, New York

Hon. Marian W. Payson, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

STATE OF NEW YORK   )
COUNTY OF MONROE  )   ss:         19-mj-4044
CITY OF ROCHESTER )

      I, Christopher W. Toscano, having been first duly sworn, do hereby depose and state as follows:

      1.    I am a sworn Task Force Officer with the Federal Bureau of Investigation (FBI) and am a Deputy with the Monroe County Sheriff's Office. I have been a member of the Monroe County Sheriff's Office since February of 2012, and have been assigned to the Buffalo, New York Division of the Federal Bureau of Investigation, Child Exploitation Task Force since March of 2017. As part of my daily duties as a Task Force Officer with the FBI, I am currently assigned to a squad that is responsible for investigating, among other things, human trafficking, to include sex trafficking.

      2.    I am trained to investigate and have participated in investigations involving a wide range of local, state, and federal criminal violations. During my employment with the FBI and Monroe County Sheriff's Office, I have had extensive training in the methods used by pimps to operate in the commercial sex industry. During my duties, I have participated in the execution of multiple search warrants for various violations of Federal law and have seized evidence in connection with such warrants.

3. This affidavit is submitted for the limited purpose of establishing probable cause to believe that QUONDALL D. DAVIS, born xx/xx/1994, while in the Western District of New York:

    a. knowingly recruited, enticed, harbored, transported, provided and obtained a person, that had not attained the age of 18 years and would be caused to engage in a commercial sex act, in and affecting interstate commerce, in violation of Title 18, United States Code Sections 1591(a) and 1591(b)(2); and

    b. knowingly, in and affecting interstate commerce, recruited, enticed, harbored, transported, provided, and obtained a person, that would be caused to engage in a commercial sex act through the use of force, threats of force, fraud, coercion, or any combination thereof, in violation of Title 18, United States Code, Sections 1591(a) and 1591(b)(1).

4. The information contained in this affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and the review of documents and records. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that QUONDALL D. DAVIS did knowingly violate Title 18, United States Code, Sections 1591(a), 1591(b)(1) and 1591(b)(2).

## BACKGROUND OF THE INVESTIGATION

5. On February 28, 2018, during the course of a prostitution detail, members of the Monroe County Sheriff's Office (MCSO) arrested Minor Victim 1 (MV1) and

Cooperating Witness 1 (CW1) for prostitution. At the time of the arrest, MV1 was 16 years old.

6. On March 21, 2018, your affiant spoke with CW1 who provided the following information. CW1 knows a male who goes by the name "Hot Dog" that has approximately four (4) different females prostituting for him, three of which CW1 identified by name. CW1 described the prostitution ring as follows: "Hot Dog" would place an ad on the website "backpage.com". Once a "lick" (a customer) would contact the phone number on the ad, "Hot Dog" would then reach out to one of his girls and have them picked up by a driver. CW1 indicated that "Hot Dog" would use his Facebook account to contact the girls and use the phrase "You trying to jug". CW1 stated that if "Hot Dog" sent you this message it was implied that a date was set up to get money. CW1 provided the Facebook account "Longway Checkz" as belonging to "Hot Dog". CW1 then stated that after the girl finished with the date, she was to give half of the profits to "Hot Dog".

7. CW1 also stated that "Hot Dog" would have his girls have sex with different guys in order to receive "boy". It should be noted that the term "boy" is often used to describe the drug heroin. CW1 stated if the girls received "boy" they were to give all of the "boy" to "Hot Dog" and they would not get any money in return. CW1 indicated that "Hot Dog" has bragged about making thousands of dollars in a night from his girls prostituting. CW1 indicated that she believes the girl MV1 has prostituted for "Hot Dog" on more than 20 occasions and has performed the following acts with clients in exchange for money: sexual intercourse, oral sex and anal sex. CW1 also indicated that "Hot Dog"

would supply condoms to the girls and he typically would always have two phones on his person. CW1 described those phones as being an iPhone and a black/gray android type phone. CW1 indicated that the android phone was "Hot Dog's" phone used for clients.

8. Your affiant conducted identification procedures with CW1, MV2 and MV3. They identified DAVIS as "Hot Dog".

9. On March 22, 2018, your affiant obtained a signed state search warrant from Honorable Vincent Dinolfo authorizing the search and seizure of the Facebook account "Longway Checkz", which belongs to DAVIS.

10. Your affiant reviewed DAVIS's Facebook account and observed, among other items, a photo of a contact with the name "LongWay" and the mobile number "+1 315-992-XXXX" attached. Using a law enforcement database, your affiant entered this cellphone number and observed one advertisement associated with prostitution in the Syracuse, NY area using that number. Your affiant also observed photographs depicting two different cell phones, one being an iPhone and one being what appears to be a ZTE android cell phone. Both cell phones appear to be similar to the phones described by CW1 as belonging to DAVIS. Your affiant further observed Facebook Messenger communications between DAVIS and MV1, and additional young females known to your affiant including, Minor Victim 2 (MV2) and Minor Victim 3 (MV3). These communications took place between August 2017 and 2018.

11. In December 2018 your affiant interviewed CW1 again and CW1 stated that DAVIS continued to have minors working for him including MV1 and two other minors CW1 knew by name. CW1 indicated the girls would be posted on the websites "bedpage.com" and "cityxguide.com". CW1 indicated DAVIS reached out requesting CW1 post prostitution advertisements for him using the phone number 716-202-XXX. Using a law enforcement database, your affiant entered the phone number 716-202-XXXX and located approximately eight (8) advertisements associated with prostitution.

### INTERVIEW OF MINOR VICTIM 1 (DOB 10/XX/01

12. On December 19, 2018, TFO Carlton Turner and your affiant interviewed MV1 (DOB 10/XX/01). MV1 stated she was prostituting for DAVIS. MV1 indicated first prostituting for DAVIS when she was 16 years old. MV1 stated she would give half of the money she earned from prostitution to DAVIS. MV1 indicated never seeing the prostitution advertisements but indicated DAVIS would give her the name "tiny" when meeting a client. MV1 stated that DAVIS would have parties to recruit girls and that he would give his girls molly (ecstasy) if they wanted it.

### INTERVIEW OF MINOR VICTIM 2 (DOB-11/XX/99)

13. On March 7, 2019, TFO Carlton Turner and your affiant interviewed MV2 (DOB 11/XX/99). MV2 stated she began prostituting for DAVIS when she was 17 years old and continued prostituting for him when she was an adult. MV2 turned 18 in

November 2017. MV2 indicated that after she turned 18, DAVIS began forcing her to prostitute. MV2 stated when she was 17 years old, she asked DAVIS for a ride. When MV2 got into DAVIS' vehicle, he drove her to a parking lot on Buffalo Road, Gates, New York. MV2 indicated that DAVIS then proceeded to call someone and hand her the phone and told her to talk to the person because she was going to go see him. MV2 indicated that she told DAVIS no, but DAVIS responded by threatening to "beat her ass" and leave her behind if she did not get out of the car.

14. When asked what DAVIS expected MV2 to do with the client, MV2 stated that DAVIS was talking to the man as a female and told MV2 she was to get $120 for 30 minutes with the client. MV2 then stated that DAVIS instructed her to not stay with the man the whole time and she was to give half of her money to DAVIS. MV2 explained this instance was the first time MV2 had ever prostituted. When asked what sexual act DAVIS expected MV2 to perform on the male, MV2 stated "I was to suck his dick with the condom on".

15. MV2 stated that DAVIS gave her instructions on how to service clients such as, "get the money first" and "don't do too much and don't take too long". MV2 stated she prostituted for DAVIS two times when she was 17 years old and both times gave DAVIS half of the money she earned.

16. MV2 stated that when she was 18 years old, she was staying at the Motel 6 on Buell Road with DAVIS. MV2 indicated that she prostituted for DAVIS while staying at

the Motel 6, and indicated it was more than 10 times. When asked if MV2 wanted to prostitute for DAVIS at the Motel 6, MV2 stated "no" and indicated that DAVIS had threatened and physically assaulted MV2.

17. When asked what name DAVIS gave MV2 for the prostitution advertisements, MV2 stated "lady". When asked if DAVIS took any photographs of MV2 for the advertisements, MV2 stated "yes" and indicated they were of panties and one of MV2 covering up a tattoo on her chest. MV2 then stated that she believes DAVIS placed something into her drink because she woke up one morning and saw the name "Hot Dog" tattooed on her chest. MV2 then stated that at no time would she ever knowingly get "Hot Dog" tattooed on her body.

18. MV2 then stated that when she was 17 years old, DAVIS took a video of her masturbating and sent it to a male. When asked why DAVIS sent this video to the male, MV2 stated DAVIS used the video as a way to get "johns" (clients) to pay more money when seeing MV2. When asked if MV2 met with this male, MV2 stated "yes" and indicated receiving 200 dollars after performing oral and vaginal sex on the male. When asked where this incident occurred, MV2 stated it occurred at a truck stop in Henrietta. MV2 indicated she gave half of the money she earned this night to DAVIS.

19. When asked how DAVIS forced MV2 to prostitute after she turned 18 years old, MV2 indicated that between November 2017 and April 28, 2018, DAVIS began beating her and threatening her. MV2 indicated that when she was around DAVIS, she would

have anxiety and DAVIS would prevent her from using her inhaler. When asked if DAVIS ever hit MV2 because she did not want to prostitute for him anymore, MV2 stated "yes". When asked if DAVIS ever used any weapons, MV2 stated "yes" and indicated that DAVIS stabbed her with a screwdriver. When asked why DAVIS stabbed MV2, MV2 stated it was because she tried to "tell on him" for other incidents. TFO Carlton Turner then asked MV2 where DAVIS stabbed her to which MV2 stated, "my side". MV2 then stated that DAVIS has thrown a DVD Player and a toaster at the head of MV2. MV2 indicated that DAVIS also used a cell phone to beat her and held a knife to her neck. At that point, MV2 began showing the different scars she received from DAVIS.

20. MV2 confirmed that when she was 17 years old DAVIS had her prostitute for him approximately two times; each time she received approximately 120 dollars and gave DAVIS half of her earnings. MV2 confirmed that when she was 18 years old, she prostituted for DAVIS "more than 10 times" in a week. When asked how many months this occurred, MV2 stated approximately 6 months. MV2 indicated that she was to give DAVIS either all or some of the money she earned from prostitution. MV2 indicated that DAVIS forced her to prostitute on November 29 and continued until April 28.

21. When asked if DAVIS knew how old MV2 was when she first began prostituting for him, MV2 stated "yes" and indicated telling DAVIS that she was 17 years old. When asked if DAVIS knew how old MV1 was, MV2 stated that both her and DAVIS knew MV1 was in high school because DAVIS would get mad when MV1 did not come out

8

to make money. MV2 indicated that DAVIS would give the girls "molly" as a means to keep them up and prostituting longer.

22.     MV2 stated she recognized the Facebook name "Longway Checkz" as belonging to DAVIS. Your affiant then showed MV2 Facebook conversations between her and DAVIS in which DAVIS was directing MV2 to engage in prostitution. MV2 indicated that she recalled that incident and stated that she was "forced" to engage in prostitution.

### INTERVIEW OF MINOR VICTIM 3

23.     On March 21, 2019, SA Barry Couch and your affiant interviewed MV3 (DOB: 7/XX/00). MV3 acknowledged prostituting for DAVIS approximately three or four times when she was 17 years old. MV3 turned 18 in July 2018. MV3 stated that DAVIS would set up the dates and that she would give DAVIS half of the money she earned from prostitution. When asked if DAVIS took MV3 to any hotels, MV3 stated "no" and indicated that she would get picked up by a "john" and go to his house.

24.     Your affiant read Facebook conversations involving DAVIS and MV3 where DAVIS is directing MV3 to prostitute in May 2017, when MV3 was 16 years old. Your affiant then read to MV3 Facebook conversation on June 27, 2017, between "Longway Checkz" and MV3 in which DAVIS is directing MV3 to "call this lick". Davis provided a phone number and told MV3 that her name is "Tiny". When asked if MV3 recalls this conversation, MV3 stated "yes".

9

25. Your affiant then read to MV3 another Facebook conversation occurring on July 9, 2017 and July 10, 2017, between "Longway Checkz" and MV3 in which DAVIS indicates having "a lick for 150" and directing MV3 to meet the lick. When asked if MV3 recalled this conversation, MV3 stated "yes" and indicated that DAVIS had her prostitute for him that day.

## CONCLUSION

Based upon the foregoing, your affiant respectfully submits that there is probable cause to believe that QUONDALL D. DAVIS violated Title 18, United States Code, Sections 1591(a) and 1591(b)(2) by knowingly recruiting, enticing, harboring, transporting, providing and obtaining a person, that had not attained the age of 18 years and would be caused to engage in a commercial sex act in and affecting interstate commerce; and Title 18, United States, Code Sections 1591(a) and 1591(b)(2) by knowingly, in and affecting interstate commerce, recruiting, enticing, harboring, transporting, providing, and obtaining a person, that would be caused to engage in a commercial sex act through the use of force, threats of force, fraud, coercion, or any combination thereof.

_Christopher Toscano_
Christopher W. Toscano
Task Force Officer
Federal Bureau of Investigation

Sworn to before me this
__3rd__ day of April 2019.

_Marian W. Payson_
HON. MARIAN W. PAYSON
United States Magistrate Judge

10