UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THE UNITED STATES OF AMERICA,


       - vs -                              **DECLARATION IN SUPPORT**
                                          **OF DEFENDANT'S MOTION**

QUONDALL DAVIS,                      20-CR-6034 (CJS)(MWP)

           Defendant.
_____

      Jeffrey Wicks, an attorney duly admitted to practice law before this court,

makes this Declaration under penalty of perjury, pursuant to 28 U.S.C. 1746:

1.  Your deponent is a duly licensed New York attorney and has been admitted

    to the bar of the United States District Court, Western District of New York.

2.  Deponent represents defendant QUONDALL DAVIS charged in an Indictment

    dated March 5, 2020 No. 10-CR-6111 (CJS).  A copy of the indictment is

    attached as Exhibit "A."

3.  Your deponent is fully familiar with the facts of this case as related by

    QUONDALL DAVIS, and as described in the indictment, and makes the

    following allegations herein based upon information and belief.

                **THE CHARGES AGAINST QUONDALL DAVIS**

1.   The indictment charges QUONDALL DAVIS as follows: in count 1, he is

    charged with Sex Trafficking of a Minor, in violation of 18 USC sections

    1591(a)(1) and (b)(2), with respect to "Victim 1"; in  count 2, he charged with

    Sex Trafficking of a Minor,  in violation of 18 USC sections 1591(a)(1) and

    (b)(2), with respect to "Victim 2".

**I. MOTION TO SUPPRESS EVIDENCE**

2. All of the defendant's statements must be suppressed pursuant to the 5th and

   6th Amendments as being involuntary, the product of coercion and violative of

   the right to counsel. A statement taken in violation of the rule that once a

   criminal defendant invokes his Sixth Amendment right to counsel, subsequent

   waiver of that right, even if voluntary, knowing, and intelligent under traditional

   standards, is presumed invalid if secured pursuant to police-initiated

   conversation, may be used to impeach defendant's false or inconsistent

   testimony, even though same statement may not be used as substantive

   evidence. *Michigan v. Harvey,* 494 U.S. 3 (1990); *U.S. v. Spencer,* 955 F.2d

   814 (1992).

3. According to an audio recording provided to the defense, statements were

   taken from Mr. Davis on April 4, 2019 at 9:10 p.m. by Rochester Police

   Department Investigator Carlton Turner ("Turner") and Monroe County

   Sheriff's Deputy Christopher Toscano ("Toscano").  Toscano, upon

   information and belief, at the time in question, was a Monroe County Sheriff's

   Deputy assigned to the FBI Child Exploitation Task Force, and is now an FBI

   Special Agent.

4. Turner begins the interview by saying that they are "at the Public Safety

   Building and we're going to interview Quondell Davis in the back of Toscano's

   car."

5. There was no question that Mr. Davis was in custody at the time of the interview. At the end of the approximately 44-minute interview, one of the officers announces on the radio: "FBI bringing in one prisoner."

6. At the outset of the interview, one of the officers conducts the following conversation with Mr. Davis:

OFFICER: Before we ask you any questions, you must understand your rights. You have the right to remain silent; anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have a right to have a lawyer with you during the questioning. If you cannot afford a lawyer one will be appointed for you before any questioning if you wish. If you decide to answer questions now without a lawyer present you have the right to stop answering at any time. Do you understand what I've read you?

MR. DAVIS: Yeah.

OFFICER: OK (whereupon interrogation immediately begins).

7. However, although Mr. Davis indicated that he understood what had been read to him, there was a complete absence of a question being put to Mr. Davis of whether he was willing, to waive his rights that were read to him and answer questions put to him by the officers. Accordingly, there is no basis to believe that Mr. Davis' statements were either voluntary or knowing and intelligent. Moreover, Mr. Davis submits that the statements were involuntary and the result of coercion.

8.  In *Miranda v. Arizona*, 384 U.S. at 436 the Supreme Court held that the

    prosecution may not use a defendant's statements that are the product of

    custodial interrogation unless it demonstrates that the defendant was first

    warned of his Fifth Amendment privilege against self-incrimination and then

    voluntarily waived that right.  *Miranda v. Arizona*, 384 U.S. at 444.

    > "Custodial interrogation exists when a law enforcement official
    > questions an individual and that questioning was (1) conducted in
    > custodial settings that have inherently coercive pressures that tend
    > to undermine the individual's will to resist and to compel him to
    > speak (the in custody requirement) and (2) when the inquiry is
    > conducted by officers who are aware of the potentially incriminating
    > nature of the disclosures sought (the investigative intent
    > requirement)."

    *United States v. Rodriguez*, 356 F.3d 254, 258 (2d Cir. 2004) (citing *United*

    *States v. Morales*, 834 F.2d 35, 38 [2d Cir. 1987] [internal citations omitted]).

9.  In determining whether a defendant was in custody, a court must consider

    two questions.  First, "whether a reasonable person would have thought he

    was free to leave the police encounter at issue."  *United States v. Newton*,

    369 F.3d 659, 672 (2d Cir. 2004), *cert. denied*, 125 S. Ct. 371 (2004).  If so,

    the court must then consider whether the "reasonable person would have

    understood his freedom of action to have been curtailed to a degree

    associated with formal arrest."  *Id.* (citing *California v. Beheler*, 463 U.S. 1121,

    1125 [1983]).

10.  The question remaining, therefore is whether Mr. Davis waived his

    constitutional rights before answering the agents' questions.  To establish a

    valid *Miranda* waiver, it is the government's burden to prove by a

    preponderance of the evidence "(1) that the relinquishment of the defendant's

rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (citing *Moran v. Burbine*, 475 U.S. 412, 421 [1986]).

11. The U.S. Supreme Court, in *North Carolina v. Butler*, 441 U.S. 369, 373 (1979), ruled that:

> "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. *The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the* Miranda *case. As was unequivocally said in* Miranda, *mere silence is not enough.* That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated."

(Emphasis added) (footnote omitted).

12. Moreover, "[o]nly if silence is joined with some showing that [the] defendant, having comprehended his rights, nonetheless thereafter followed a course of conduct suggesting an abandonment of his entitlement to counsel, may an implied waiver be found." *United States v. Ming He,* 94 F.3d 782, 794 (1996). Additionally, the standard for waiver is the same under both the Fifth Amendment and the Sixth Amendment. *Patterson v. Illinois,* 487 U.S. 285, 296 (1988). "[A] valid waiver will not be presumed simply from the silence of the accused after [*Miranda*] warnings are given or simply from the fact that a confession was in fact eventually obtained." *Miranda,* 384 U.S. at 475.

Rather, the strict "knowing and intelligent" waiver standard of *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938), applies. *Gilchrist v. O'Keefe,* 260 F.3d 87, 95 (2d Cir.2001) ("the Supreme Court's 'knowing and intelligent' waiver standard applies to constitutional rights generally, not solely to the [sixth amendment] right to counsel"), *citing Johnson,* 304 U.S. at 464; *Davis v. United States,* 512 U.S. 452, 458 (1994) ("[t]he right to counsel recognized in *Miranda* is sufficiently important to suspects in criminal investigations ... that it 'requires the special protection of the knowing and intelligent waiver standard' "), *quoting Edwards v. Arizona,* 451 U.S. 477, 483 (1981).

13. Accordingly, the defense moves for an order suppressing all statements allegedly made by Mr. Davis from use at trial. In the alternative, Mr. Davis requests a hearing to resolve any disputed issue of fact. *See Jackson v. Denno*, 378 U.S. 368, 377 (1964).

## II. AN ORDER FOR SUPPRESSION OF TANGIBLE EVIDENCE

14. The Government has indicated its intention to offer evidence produced as a result of a Search Warrant ("the Warrant") issued by Monroe County Court Judge Vincent DiNolfo on March 22, 2018. A copy of the Warrant, together with an Affidavit for Search Warrant signed by Deputy Christopher Toscano, is attached hereto as Exhibit "A".

15. The Warrant was directed to be served on FaceBook, at 1601 Willow Road, Menlo Park, California 94025, and authorizes a search and seizure of the following:

"Account records or stored data related to the following Facebook account:

- https://www.facebook.com/longway.checkz,        username longway.checkz, display name of 'Longway Checkz'"

16. As a result of the Warrant, over 10,000 pages of Mr. Davis' FaceBook account were seized.  The defense moves to suppress all such evidence.

17. The Fourth Amendment to the Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ."  U.S. Const. Amend. IV; *see also* Fed. R. Crim. P. 41.  In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court affirmed the "totality of the circumstances" test to determine whether a search warrant satisfies the Fourth Amendment's probable cause requirement.  According to the Court, the issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id.* at 238.

18. In addition, the Fourth Amendment further requires that a search warrant "particularly describ[e] the place to be searched, and the person or things to be seized."  U.S. Const. Amend. IV; *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).  The reason for this "particularity" requirement is to prevent general searches.  *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).  "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the [particularity] requirement ensures that the

search will be carefully tailored to its justifications, and will not take on the

character of the wide-ranging exploratory searches the Framers intended to

prohibit." *Id.* at 84.

19. The Search warrant for FaceBook, as set forth above, was based upon an

application Deputy Christopher Toscano. (*See* Exhibit A). Toscano's's

supporting Affidavit did not, however, provide any information whatsoever or

supply the Judge with any facts, let alone give any basis for probable cause

to believe that any crime had been committed, let alone that there was any

basis to believe that the materials to be seized were instumentalities of a

crime. Nor did the Judge have in front of him any information to decide

whether, given the "'basis of knowledge' of persons supplying hearsay

information, there is a fair probability that contraband or evidence of a crime

will be found in a particular place." See, *Maryland v. Garrison*, 480 U.S. at

238.

20. Surprisingly, before the words **"THE FOREGOING REPRESENTS THE

GROUNDS FOR MY BELIEF[]"** appear in the Affidavit – in bold and capital

letters (see, Exhibit "A" at p. 6 – no information or "grounds for [Toscano's]

belief" are set forth in any form whatsoever. The only information provided in

the Affidavit is the account information set forth above, as well as the address

to be searched, as set forth above. The following paragraph also appears in

the Affidavit:

> "Proof, by affidavit, having been made this day
> made *before me* by Chris Toscano. a Deputy Sheriff
> with the Monroe County Sheriffs Office assigned to
> the Criminal Investigations Section and the FBI Child
> Exploitation Task Force, that there is reasonable cause

to believe that the property described below is evidence of the crime of Promoting Prostitution in the Third Degree in violation of Article 230.25(1) and/or the crime of Promoting Prostitution in the Second Degree in violation of Article 230.30(2) of the New York State Penal Law and said property may be found within the premise described below."

(Emphasis added).  The paragraph, to say the least, raises serious questions because of the inclusion of the words "before me", because it emulates the language in the Warrant itself, almost as if this document purports to be the Warrant.

21.  In order to satisfy the Fourth Amendment, a search warrant must be based upon probable cause to believe a crime has been committed and that evidence of that crime will be discovered in the place to be searched.  *See Illinois v. Gates*, 462 U.S. at 238.  In the instant matter Deputy Christopher Toscano's Affidavit failed to establish probable cause to search the specific location of 1636 Price Road.  Thus, all evidence seized pursuant to the execution of the search warrant should be suppressed.

## III.  DISCLOSURE OF WITNESSES' STATEMENTS

22.  Under 18 USC Section 3500 ["Jencks Act"] the defendant is entitled to each witness' statement[s] after the witness has completed his or her testimony on direct examination.  Courts have on a case-by-case basis invoked their discretion to require production of *Jencks Act* statements in advance of the trial so that unnecessary delays will not occur during the course of the trial. *See United States v. Moceri*, 359 F.Supp. 4311 (N.D. Ohio 1973); *United*

*States v. Myerson*, No. 87 CR. 796, (S.D.N.Y. June 21, 1988)[Lexis Genfed Library, New file].

23.  As noted above, in that connection, the defendant requests the court to order the government to deliver to the defendant immediately, but in no event later that one [1] month prior to the date of trial, the following:

a.  Any written statement[s] made by a witness that is signed or otherwise adopted or approved by the witness.

b.  Any stenographic, mechanical, electrical, or other recording or a transcription thereof, which is a substantially verbatim recital of an oral statement made by the witness and recorded contemporaneously with the making of such oral statement.

c.  Any statement, however taken or recorded, made by a witness to a Grand Jury.

d.  Any and all rough notes of witness interviews taken or obtained in any investigation of the defendant, including Federal, State, Local, and other investigations, whether or not the contents have been incorporated in official records.

e.  Any notes and memoranda made by government counsel during the interviewing of any witness to be called by the government in its direct case.  *Goldberg v. United States*, 425 U.S. 94, 101-08 (1976).

f.  All surveillance reports made or adopted by a witness.  *United States v. Petito*, 671 F.2d 68, 71 (2nd Cir. 1981).

24. Sufficient pre-trial delivery of *Jencks* material, in addition to avoiding delays, ensures the defendant's fundamental right to a fair trial and due process are safeguarded and is also essential to the development any meaningful alibi testimony.

25. Consequently, we ask this court to invoke the sensible and liberal construction of 18 USC Section 3500.

26. In addition, the defendant requests the opportunity to interview each and every witness to be called by the government, including but not limited to, witnesses in the Federal Witness Protection Program, immediately but no later than two [2] months prior to the commencement of trial of this action.

27. The names of all government witnesses should be disclosed at least one [1] month before trial for the reasons stated above.  [See *Cissel, Federal Criminal Trials*, Section 711, at 247 (2d Ed. 1987); *United States v. Turkish*, 458 F.Supp. 874, 880-87 (S.D.N.Y. 1978); *U.S. v. Cannone*, 528 F.2d 3102 (2nd Cir. 1975)*; U.S. v. Bryan*, 868 F.2d 1032 (2nd Cir. 1989)].

## IV. DISCOVERY AND INSPECTION:
## RULE 16 GENERAL REQUESTS

28. The discovery requests made herein are directed to any relevant evidence that may not yet have been supplied or made available by the government.

29. Upon information and belief, undercover police, citizen informants, state and local law enforcement and additional federal agencies were involved in the investigation.  The discovery requests herein are directed to all relevant materials and information generated or collected by or under the auspices of any and all of the agencies which have been involved in the investigation to

date. The term "government" used herein refers to all government agencies (local, state and federal) and their employees and agents that played a part in the investigation.

30. Pursuant to F.R.C.P. 16, the defendant moves this court for an order permitting him to inspect, copy or photograph all of the following items, which are in the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence should or may become known to the prosecution, as follows:

31. Any statement of the defendant in any form intended to be utilized by the Government within Rule 16 (a) (1) (A).

32. Any statement in any form of which the Government is aware or through the exercise of reasonable diligence should be aware of any alleged co-conspirator indicted or unindicted, made during, in the course of and in furtherance of the alleged conspiracy charged in the indictment. (*U.S. v. Nakashian* 635 F. Supp. 716 (S.D.N.Y. 1986). These statements are considered, as a matter of law, to be statements of the defendant made as part of the continuing criminal venture and, therefore, under principles of agency and/or partnership are vicariously the statements of the defendant and discoverable under Rule 16 (a) (1) (A). All co-defendant/co-conspirator statements are demanded. The defendant is also entitled to pre-trial disclosure, of all statements of non-testifying co-conspirators charged or uncharged and within or without the present indictments that may be potentially imputed to the defendant if admitted into evidence under the co-

conspirators hearsay rule (See: F.R.E. 801 (d) (2) (E); *U.S. v. Jackson*, 757

F.2d 1486 (4th Cir. 1986); *U.S. v. Feola*, 651 F. Supp. 1068 (S.D.N.Y. 1987)).

33. Any statement, representation or communication ascribed to this defendant

by any witness alleged to have been made during the course of any

conspiracy or substantive crime charged in the indictment.

34. Any statement, representation or communication ascribed to this defendant

made to any charged or unindicted co-conspirator or co-defendant at any time

relevant to any event charged in this indictment.

35. Any statement, representation or communication ascribed to this defendant

made during and after the commission of the alleged crimes, whether part of

the alleged crimes or not.

36. A copy of this defendant's prior criminal record if any (Rule 16 (a) (1) (B)) and

the reservation of right in limine to apply to this Court for a fact-finding hearing

regarding the extent and nature of the Government's use on cross-

examination of any such criminal record and/or any of the underlying facts.

37. All documents, photographs, audio tapes, video tapes and tangible objects

not already disclosed pursuant to Rule 16 (a) (1) (C).

38. All reports of examinations and tests pursuant to Rule 16 (a) (1) (D); *U.S. v.

Feola*, 651 F. Supp. 1068 (S.D.N.Y. 1987) including but not limited to

fingerprint, palmprint, voice print, laboratory reports and handwriting exemplar

reports.

39. All videotapes in which the defendant's image appears and all audio tapes on

which the defendant's voice is heard.

40. To the extent not already provided:  All pen registers and toll records created and used/or by the government in the investigation which led to the indictment herein.  In addition, all orders or other written requests for these pen registers and toll records are requested.  These documents were used to support the probable cause claims in the eavesdropping warrant application and orders under scrutiny here.  They must be examined to verify the agents' claims that normal investigatory techniques had been exhausted and to verify that the information was legally obtained.  See *U.S. v. Feola*, 651 F.Supp. 1068, 1144 (S.D.N.Y. 1987).

41. To the extent not already provided:  Copies of all surveillance reports of the defendant for the period of time covered in the indictment together with copies of all rough or raw police notes taken as part of the investigation regardless of whether same have been incorporated in official records.

42.  To the extent not already provided:  All surveillance reports concerning the persons and locations described in the affidavit submitted in support of the eavesdrop warrant.  These reports are required in order to verify the agents' claims that surveillance had been undertaken for all such persons, that surveillance was difficult and that further surveillance would not reveal any useful information.  The surveillance reports will allow the defense to test the agent's claims that normal investigative techniques had been exhausted.

43.  To the extent not already provided, all eavesdropped, mechanically or electronically reproduced conversations, words or declarations of the defendant and/or any other person connected with this indictment, including

all body wire or unilaterally surreptitiously recorded telephone conversations together with verbatim transcriptions.

44. To the extent not already provided: All search warrants and search warrant returns.

## V.  INSPECTION OF THE GRAND JURY LIST

45. The defendant has a constitutional and statutory right to a grand jury chosen without discrimination from a fair cross-section of the community (*Glasser v. United States*, 315 U.S. 60 (1942); 28 U.S.C. § 1861), including discrimination against minorities other than those of the defendant.  *See, e.g., Campbell v. Louisiana*, 523 U.S. 392 (1998) (a white defendant has standing to challenge discrimination against blacks on equal protection and due process grounds in selection of grand jurors).  The provisions of the Jury Selection and Service Act of 1968 allow the defendant an unqualified right to inspect jury lists during the preparation of a motion to challenge compliance with the jury selection procedure.  *Test v. United States*, 420 U.S. 28 (1975); 28 U.S.C. § 1867(f).

46. Therefore, pursuant to 28 U.S.C. § 1861, *et seq.*, the defendant requests the Court to order the Clerk of the U.S. District Court for the Western District of New York to allow the undersigned or his designated agent(s) to inspect, reproduce, and copy any and all records or papers used in the selection of the grand jury that indicted the defendant.  Inspection of these jury records will permit the defendant to determine whether the grand jury panel was selected, and treated, in accordance with the law.

## VI.    "BRADY", "AGURS", AND "GIGLIO" MATERIAL

47.  The defendant herein requests the Government, under the due process

clause of the Constitution, statutes of the United States and case law

interpretations, turn over evidence in any way favorable to the defendant and

material to guilt, innocence or punishment (Brady), including, but not limited

to, any illegal conduct including unauthorized video surveillance, electronic

surveillance, wire-tapping or trespassory search employed against this

defendant in any way, or statements, grand jury testimony, witnesses, books,

papers, reports, photographs, handwritten notes or synopses of statements

made by any witness or non-witness, or any other tangible items of evidence

in the custody or control of the prosecution or any other governmental agency

or agents working under the supervision of the Government, including rough

notes, surveillance notes or memos of any government agent regardless of

use in this prosecution; or evidence that in any way impeaches the credibility,

factual assertions, testimony or allegations of any government witness about

any aspect of his or her testimony or the case, theory or presentment by the

Government, and all within the opinions, mandates and requirements of *U.S.

v. Agurs* 427 U.S. 97 (1976); *Brady v. Maryland* 373 U.S. 83 (1963); *U.S. v.

Giglio* 405 U.S. 150 (1972); *Napue v. Illinois* 360 U.S. 264 (1959).  The due

process clause requires the pre-trial disclosure of exculpatory or

impeachment material (See:  *U.S. v. Agajanian* 852 F.2d 56 (2nd Cir. 1988)

and access to evidence (See:  *Arizona v. Youngblood* 109 S.Ct. 333 et seq.)

to assure the defendant overall fairness, due process, compulsory process

and those rights guaranteed by the 6th Amendment.  In *U.S. v. Percevault* 490 F.2d 126 (2nd Cir. 1974) the Court recognizing "those abhorrent lengthy pauses at trial to examine documents" (at 132), and noting its discretion in administering disclosure, encouraged pre-trial disclosure that would redound to the benefit of all parties, counsel and the court.

48.  The substance of any "deals", understandings, contracts, or agreements by the government or any of its agents or agencies with any individuals who may serve as witnesses, consultants or sources of information to any law enforcement agency in which the individual may expect immunity or other favorable treatment including sentence, parole, probation or sentence reduction in return for his/her cooperation or testimony in this or any other prosecution and/or any interest, motive or bias on the part of any Government witness (*Bagley v. U.S.,* 473 U.S. 667 (1985)).

    a.  Any polygraph results, questions; answers, evaluations; "print-outs"; tapes or any papers, documents, reports, notes or memoranda as to any Government witness inclusive of any informant, co-conspirator indicted or unindicted or accomplices as a matter of fact or law--particularly, if this information contradicts or is at variance in the slightest degree to any police report; agents notes, prior sworn or unsworn statement or testimony of said witness.  *(Carter v. Rafferty*, 826 F.2d 1299; *Giglio v. U.S.* 405 U.S. 150).

    b.  The criminal records of any prospective prosecution witnesses and any information indicating these witnesses have, prior to or during the trial

itself, committed any immoral, vicious or criminal acts (*Giles v. Maryland* 386 U.S. 66 (1967)).

c. Any information relating to the psychiatric history of any potential witness or source of information used in any manner in the framing or preparation of this case.

49. The early production of the exculpatory ("*Brady",* "*Agurs"* impeachment "*Giglio*") material is of a constitutional dimension and implicates the due process clause. (See: *U.S. v. Deutsch,* 373 F. Supp, 289 (S.D. N.Y. 1974); *U.S. v. Agajanian,* 852 F.2d 56 (2nd Cir. 1988); *Arizona v. Youngblood,* 109 S.Ct. 333*; U.S. v. Valenzuela-Bernard,* 458 U.S. (1982)), implicating the due process clause and the constitutionally guaranteed access to evidence. *U.S. v. Pollack*, 534 F.2d 964 (DC Cir. 1976 0, *cert. denied,* 429 U.S. 924 (1976).

50. The defendant also requests the government, in the interests of sound trial management, judicial economy and due process, provide all so called "Jencks Act material" thirty days prior to jury selection. *U.S. v. Percevault,* 490 F.2d 126 (2nd Cir. 1974); *U.S. v. Feola,* 651 F. Supp. 1068 (S.D. N.Y. 1987).

## VII.  RULE 12 (d) NOTICE

51. The defendant has received voluntary discovery.

52. The relief sought herein is the product of the culling through the provided documents.

53. Should the Government intend to use any additional matters or materials

requested here or elsewhere in this motion, a description of the additional

evidence and the evidence itself is requested.

### XIII.  MOTION IN LIMINE (PRIOR BAD ACTS, ETC.)

54. Defendant moves this Court to restrict the evidence upon the trial of this

indictment as follows:

a.  **Rules 404 (b) and 607; 608 and 609.**

Defendant requests that the Government submit to the defendant a list of any

and all convictions, crimes, wrongs, bad acts, immoral or vicious acts,

charged or uncharged to be used pursuant to Rules 404 (b) and 609.  The

defendant specifically requests the Government disclose the use of any acts

in its case in chief that have as their purpose the establishing of motive;

intent; identification; absence of mistake or similarity in modus operandi.  If

the Government intends to introduce such evidence, the defendant requests

the Government be required disclose the names and addresses of any

witnesses and the evidence on which it will rely.  Although F.R.E. 404 (b) fails

to specifically require advance notice of such other crimes, criminal acts, bad

acts, wrongful conduct prior to trial for use on the Government's direct case,

the Court, nevertheless has the power to require such pre-trial disclosure as

an exercise of discretion in the interests of fairness, the elimination of

prejudice and the efficient and orderly administration of justice (See:

Weinstein's Evidence §404 (01), p. 404-13).

b. **Pursuant to F.R.E. 607, 608 and 609, the Fifth and Sixth Amendments**.

The defendant requests all specific instances of conduct within Rule 608 (b) and 609 the Government intends to use at trial for purposes of impeaching the credibility of the accused upon cross examination.

## IX.    PRESERVATION OF ROUGH NOTES

55. Defendant moves for an Order of this Court requiring all governmental enforcement officers who participated in the investigation of the defendant to retain and preserve all rough notes taken as part of the investigation whether or not the contents of the notes are incorporated in official records.  In particular any notes which reflect participants' or monitors' interpretation of recorded statements or actions of the defendants must be preserved as an aid to determine what was said by the defendants in the face of a poor recording or the absence of a recording.

56.  This motion is made to allow the trial court to determine whether disclosure of the notes is required under *Brady, Agurs, Giglio*, and/or the *Jencks Act* (18 U.S.C. Sec. 3500 or the Fifth and/or Sixth Amendments. of the U.S. Constitution)

57.  The thrust of this motion is to put the government and its agents on notice that from this point on any and all rough notes should be preserved.  Any destruction of notes after this request for preservation cannot be made in good faith. *See U.S. v. Sanchez*, 635 F.2d 47 (2nd Cir. 1980); *U.S. v.*

*Eleusma*, 849 F.2d 76 (2d Cir. 1988); *U.S. v. Koskerides*, 877 F.2d 1129 (2nd Cir. 1989).

## X.  AUDIBILITY HEARING

58.    It is respectfully requested that a hearing be held to determine the audibility of the tape, compact disc or other recordings the government will seek to introduce as evidence at trial.

## XI.  ORDER OF RESERVATION OF RIGHT, FUTURE APPLICATIONS

59. Your affiant requests an order for the right to bring such other and further relief as may be just, appropriate and reasonable under this court's inherent jurisdiction in all matters before it and in the interest of fairness.

**WHEREFORE**, your deponent requests an Order granting the relief sought herein together with such other and further relief as is just, reasonable and equitable under the circumstances.

Dated:  June 26, 2020
          Rochester, New York


____s/ *Jeffrey Wicks*_____
JEFFREY WICKS, ESQ.
JEFFREY WICKS, PLLC
Attorneys for QUONDELL DAVIS
Suite 101, Executive Building
36 West Main Street
Rochester, New York 14610
Telephone:  (585) 325-6070
Facsimile:  (585) 325-6082
E-Mail:  jwicks@wickslaw.net